FREDERICK A. WARD, AS ASSIGNEE, &c., OF WELLINGTON & KIDDER, Respondent, *against* SIDNEY WEBSTER, SURVIVOR OF WEBSTER & CRAIG, Appellant.

(Decided April 5th, 1880.) ·

Where property is seized as forfeited to the government of the United States and a decree of forfeiture is subsequently pronounced by the court, the title of the owners of the property is divested at the time of seizure ; and a remission of the forfeiture and an order for the payment to the owners of part of the avails of the property will not inure to the benefit of their assignee under a general assignment for the benefit of creditors made after the seizure and before the time of such remission and order for payment.

The doctrine of estoppel cannot be applied to prevent an attorney denying the right of his client to the proceeds of the action in which the attorney has been retained.

---

APPEAL from a judgment of this court entered on the report of a referee.

The action was brought to recover from James B. Craig and Sidney Webster, co-partners under the firm name of Webster & Craig, and attorneys and counselors at law, money received by them from the government of the United States, as attorneys of the firm of Wellington & Kidder, of which firm the plaintiff was the assignee under a general assignment for the benefit of creditors. The facts are stated in the opinion. Pending the action, the defendant, James B. Craig, died, and the cause was continued against Sidney Webster, as survivor. Upon trial before a referee, he found for the plaint:ff, and judgment for the plaintiff was entered on his report. From the judgment the defendant appealed.

*H. J. Begley* and *C. A. Seward,* for appellant.

*Sidney S. Harris,* for respondent.

VAN HOESEN, J.—On December 11, 1875, an information *in rem* was filed in the United States district court, for this district, for the condemnation of certain distilled spirits, alleged to have been forfeited to the United States by reason of the fraudulent acts of Wellington & Kidder. Mr. J. B. Craig was employed as attorney by Wellington & Kidder to defend them against the proceeding. Within a short time afterwards various other proceedings, some criminal and some civil, were begun by the United States against Wellington & Kidder, in all which Mr. Craig appeared as attorney for that firm. Mr. Craig associated with himself his partner, the defendant Webster. On February 14, 1876, Wellington & Kidder made a general assignment for the benefit of creditors to the plaintiff, Ward. It becoming apparent to Craig that he could not successfully defend the suits and proceedings which had been instituted against Wellington & Kidder, he determined to make the best terms possible with the government, and to confess the forfeiture of the spirits against which the

information had been filed, and to apply to the secretary of the treasury for the remission of the forfeiture. This was deemed the wisest course, because if the forfeiture were re-mitted it would be on the ground that Wellington & Kidder had not intentionally violated the law, and if they were inno-cent of all criminal intent, there would be the best of reasons for discontinuing the criminal proceedings against them, and for adjusting the civil actions: Besides, a remission of the for-feiture would involve the restoration of the goods, or of the whole or a part of their value. It is not shown when Mr. Craig began the execution of his plan of operations, whether before or after the assignment to the plaintiff, but he did con-fess the forfeiture, and did apply to the secretary of the treasury for its remission. After much difficulty, delay and labor, he succeeded in obtaining from the secretary of the treasury, in April, 1878, a remission of the forfeiture, and an order for the payment to the petitioners, Wellington & Kid-der, of a part of the avails of the distilled spirits, which, after the confession of the forfeiture, had been sold by the marshal. The order of the secretary of the treasury required that certain sums should be deducted from the amount for which the spirits had been sold, and these sums were deducted under the super-vision of the United States district court, which finally ordered that the residue of the money should be paid to Webster & Craig, the attorneys for the claimants.

The plaintiff now claims that he, as the assignee of Wel-lington & Kidder, is entitled to the moneys which the secre-tary of the treasury directed should be restored to the peti-tioners, Wellington & Kidder. He certainly is not entitled to the avails of the spirits unless he acquired by his assignment a title to the spirits themselves. That he did not acquire. Two months prior to the assignment they had been seized by the marshal as forfeited to the government, and by the admission of the plaintiff's assignors they were properly seized, and had been duly forfeited. A confession of forfeiture is equivalent to a decree of forfeiture, and as there could be no remission unless there had been a forfeiture, the plaintiff, who is seeking to get the benefit of the remission, cannot deny the validity of

the seizure and the forfeiture. When a forfeiture is complete depends upon the language of the statute providing that forfeiture shall be a punishment for a violation of the law. In *Fontaine* v. *The Phœnix Ins. Co.*, 11 Johns. 293, Judge YATES said that where the statute gives two remedies, the forfeiture of a vessel, or of its value, there the remedy was at the election of the government, and that the property would not vest in the government until it had been seized; but that where forfeiture alone had been named as the statutory penalty, the owner lost his right to the property when the act was committed which occasioned the forfeiture. To the same purport is *Kennedy* v. *Strong*, 14 Johns. 129. The head-note to the case of *Tracey* v. *Corse*, 58 N. Y. 143, to the effect that the title of the owner of property is not divested until a decree condemning the property as forfeited has been pronounced, is not warranted by the decision of the court. It is true that Judge ANDREWS, *arguendo*, expresses some doubt as to the time at which the forfeiture is complete, and says that the title of the government to forfeited property may perhaps be considered inchoate when the offense is committed, and consummate when the decree of condemnation is rendered; and that where the government, after seizing property as forfeited, abandons the seizure, the title of the owner is not divested; but these observations, giving them all the force fairly to be claimed for them, do not conflict with the rule contended for by the defendant, that where property is seized as forfeited, and the forfeiture is afterwards declared by the court, the title of the owner passes from him at the time of the seizure, so that thereafter he can convey no title to any person whomsoever. The spirits were seized about two months before the assignment, and were in the possession of the government from the time of the seizure till they were sold by the marshal. The plaintiff never had them in his possession, and he participated in the proceedings which admitted that they had been properly seized, and that they had incurred forfeiture. Wellington & Kidder had no title to them after the forfeiture had been declared by the decree, or by what was equivalent to a decree—their own confession; and the neces-

sary effect of the court's action was to determine what the rights of all parties were at the time the proceedings were initiated.    The information against the spirits was filed in December, 1875, the time of the seizure, and thenceforth, the rights of all parties being fixed, Wellington & Kidder had no interest in the spirits.    As the court of appeals has not, to my knowledge, decided that when a statute of the United States declares that property shall be forfeited, the government acquires no title to it until a decree of forfeiture has been pronounced, I do not wish to be considered as doubting that the law is as it is said to be in the two cases cited from Johnson's reports. The plaintiff therefore acquired no title to the spirits by the assignment, and it is not asserted that any subsequent conveyance was ever made to him.

The plaintiff contends, however, that even if Wellington & Kidder had no title to the spirits after the condemnation, the remission of the forfeiture operated as a reversal of a decree, and that thereafter their rights were the same as though no forfeiture had ever been incurred.    This is an erroneous view of the effect of the remission.    It reversed nothing.    The forfeiture stood.    The property, or a portion, was given back to the offenders, not because the condemnation was reversed and set aside, but because they had not willfully violated the law They were guilty, but, to use the phrase sometimes employed by courts-martial, guilty without criminality.    The remission of the forfeiture was an act of grace, and was not for the benefit of the assignee, who never owned the forfeited goods.    If property confiscated during the rebellion should hereafter be restored to some person who has made an assignment for the benefit of creditors, will it be contended that the assignment would act prospectively, and vest the property in the assignee? The remission was a gift, and for the sole benefit of those who had been injured by the rigorous application of the law.    The money not being property owned by them at the date of the assignment, could not be transferred to the assignee (*Crow* v. *Colton*, 7 Daly, 52).

It is said, however, that Mr. Craig and the defendant acknowledged the right of the plaintiff to the money by

accepting employment from him. It was conceded on the trial that the plaintiff employed the defendant and Craig to institute the proceedings for the remission of the forfeiture. From this the plaintiff argues that as the tenant is estopped from denying the title of his landlord, and as the bailee is estopped from denying the title of his bailor, so an attorney is estopped from denying the right of his employer to the fruits of the action in which he is retained. No decision was cited in which the doctrine of estoppel was ever applied in this way between attorney and client, nor is the principle at all applicable. Craig and the defendant were employed by Wellington & Kidder before the assignment, and were acting as attorneys for that firm in all the proceedings growing out of the frauds with which they were charged. The plaintiff, on becoming assignee, found that Craig advised an application for the remission of the forfeiture, and, assuming that whatever was restored to Wellington & Kidder would go into the assigned estate, he employed Craig and the defendant to prosecute the application for the remission. It does not appear that the plaintiff was induced by anything said or done by Craig or by the defendant to employ them, or that the plaintiff has in any respect altered his position in consequence of any act of the defendant or of Craig. If it be said that he might have employed other attorneys if he had known that Webster & Craig did not think he was entitled to the money restored by the secretary of the treasury, it is a sufficient answer to say that his claim to that money could not be affected or strengthened by the opinion of any attorneys respecting it. The defendant did not receive anything from the plaintiff, though if he had received a fee, I think the case would not have been altered. The facts were known to the plaintiff, and his only mistake was in supposing that the law would give to him, as assignee, the money remitted by the treasury department to Wellington & Kidder. Wellington & Kidder, the original employers of Craig and the defendant, though it does not appear that they have called for an account, or demanded any money from the defendant, may claim the advantage of an estoppel with far more reason than their assignee, for they have an interest in

the money restored by the secretary, while the assignee has no claim upon it. It is not pretended that the defendant ever agreed to account to the plaintiff for such moneys as the secretary of the treasury might restore ; and his claim comes simply to this, that he employed the defendant to prosecute the application for the remission of the forfeiture, knowing that he had previously been employed by Wellington & Kidder, and hoping, probably believing, that if a remission were procured, money would come into his hands as assignee.

I think that the judgment should be reversed, and that a new trial should be granted, and that the order of reference should be vacated.

CHARLES P. DALY, Ch. J., and J. F. DALY, J., concurred.

Judgment reversed, and new trial ordered.*

---

* The order entered upon this decision was affirmed by the court of appeals, and judgment absolute ordered for defendant, January 24th, 1882.